## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

           Plaintiff,

vs.                                    Case Number:  08-1980 WJ

SARAH S. OCHOA

           Defendants.

## DEFENDANT OCHOA'S MOTION TO DISMISS
## FEDERAL KIDNAPPING ACT CHARGE AS UNCONSTITUTIONAL

COMES NOW Defendant, Sarah S. Ochoa, by and through her counsel of record, and petitions the Court, under F.R.Crim.P. Rule 12(b)(3)(B), for dismissal of the charges brought against her by the U.S. Government in Count 2 of the Indictment.  As grounds, Defendant Ochoa states:

## INTRODUCTION

The Government brought charges against Defendant Ochoa under the Federal Kidnapping Act,[1] as reiterated in Count 2 of the indictment in this matter.  Count 2 states:

> On or about December 3, 2007, in Santa Fe county, in the District of New Mexico, the defendant, Sarah Susanna Ochoa, did willfully and unlawfully kidnap, abduct, seize, confine, inveigle, decoy and carry away, Marilyn Foss, and held her for ransom, reward, and other reason and benefit, and did use a means, facility, and instrumentality of interstate and foreign commerce, those being electronic mail and cellular telephone(s) in

---

[1] 18 U.S.C. § 1201(a)(1), which provides, in pertinent part:
> Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person…when…the offender…uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense.

committing and in furtherance of the commission of the offense.   In violation of 18 U.S.C. § 1201.

The Federal Kidnapping Act charge is the most serious allegation of the indictment, carrying the greatest penalties.  The kidnapping charge puts the case into a posture well beyond the allegations of robbery, placing it on par with the most heavily penalized federal offenses, short of a capital crime.  In order for this case to be prosecuted as a federal kidnapping, rather than a State strong-arm robbery or State kidnapping, there must be a link with the regulation of interstate commerce.  Here there is no such link. The purported basis is the use of electronic mail and a cellular telephone to communicate with the alleged kidnapping victim, Ms. Marilyn Foss, prior to the incident.  It is undisputed that all of the events involved in this case took place within the State of New Mexico.  The mere use of those instrumentalities of commerce in this case does not provide the necessary "jurisdictional hook."   This motion to dismiss challenges the constitutionality of the Federal Kidnapping Act, hence the jurisdiction for federal prosecution of Count 2.

## LEGAL ARGUMENT

**THE AMENDED FEDERAL KIDNAPPING ACT IS UNCONSTITUTIONAL**

### I.        The History of the Federal Kidnapping Act

The Federal Kidnapping Act was enacted "to assist the states in stamping out" "every possible variety of kidnapping followed by interstate transportation." *Chatwin v. United States*, 326 U.S. 455, 463 (1946).  As courts have made clear, "the need for a federal statute arose from the kidnappers' successful evasion of law enforcement authorities by merely crossing state lines.  By authorizing federal investigation and prosecution for kidnapping, Congress eliminated the kidnappers' artificial geographic

refuge." *United States v. Moore*, 571 F.2d 76, 83 (2nd Cir. 1978). This was the state of the law for decades, until Congress, in 2006, knocked down the crossing-state-lines requirement and dramatically expanded the scope of the Act to include virtually every possible kidnapping scenario – regardless of whether every single action occurred within one State's jurisdiction. Under the auspices of this amendment, the traditionally State-enforced crime of kidnapping transforms into a severely punished federal crime the moment the offender "uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense." 18 U.S.C. § 1201(a)(1).[2] This remarkable expansion constitutes an impermissible encroachment into States' policy-making autonomy that exceeds Congress's Commerce Clause power.

## II.   The Act as Amended Exceeds Congress's Commerce Clause Authority

It is well-settled that the Constitution does not grant the federal government a general police power over intrastate violent crime. See *Cohens v. Virginia*, 19 U.S. 264, 426 (1821) (Marshall, C.J.) ("Congress has . . . no general right to punish murder

---

[2] Prior to the 2006 amendment, the elements of federal kidnapping included "(1) transportation in interstate commerce (2) of an unconsenting person who is (3) held for ransom, reward, or otherwise, (4) with such acts being done knowingly and willfully." *United States v. Walker*, 137 F.3d 1217, 1220 (10th Cir. 1998). The first element had universally been agreed to mean the actual and physical crossing of a state line while intentionally transporting the victim.

Since § 1201(a)'s amendment, no federal court has had occasion to determine its constitutionality. The Tenth Circuit has been a leader when it comes to determining Congress's Commerce Clause power. See e.g., *United States v. Schaefer*, 501 F.3d 1197 (10th Cir. 2007) (disagreeing with other circuits and holding that the "use of the Internet, standing alone, was not sufficient to establish that the child pornography images at issue moved across state lines."); *United States v. Patton*, 451 F.3d 615 (10th Cir. 2006) (interpreting the constitutionality of 18 U.S.C. § 931).

committed within any of the States.").  In order for the federal government to enact provisions within the criminal code, Congress must act pursuant to one of its enumerated powers.  This case involves Congress's use of its Commerce Clause power, which grants Congress the authority "[t]o regulate Commerce . . . among the several states" (U.S. CONST. ART I, sec. 8, cl. 3).  Here, Congress has overstepped the limits of this power, simultaneously usurping the police power left to the States, by federally criminalizing intrastate kidnappings when the offender has merely used "any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense."

### III.  The Act Falls Outside the Parameters of the Regulation of Channels of Commerce, Instrumentalities of Commerce, and Activities Substantially Affecting Commerce

The United States Supreme Court has articulated three general categories of regulation granted to Congress under its Commerce Clause power.  These are (1) the channels of commerce; (2) the instrumentalities of commerce, including persons and things in interstate commerce; and (3) activities that substantially affect interstate commerce.  For the reasons set forth below, the portion of the Act that refers to "any means, facility, or instrumentality" of interstate commerce goes beyond the powers of the Commerce Clause because it exceeds the authority granted to Congress to regulate interstate commerce, and is unconstitutionally vague and overbroad, on its face and as applied to Defendant Ochoa.

In *United States v. Lopez*, 514 U.S. 549 (1995), the United States Supreme Court defined the three limited categories of activity that Congress may regulate under the Commerce Clause:

> First, Congress may regulate the use of the channels of interstate
> commerce. Second, Congress is empowered to regulate and protect the
> instrumentalities of interstate commerce, even though the threat may come
> only from intrastate activities. Finally, Congress' commerce authority
> includes the power to regulate those activities having a substantial relation
> to interstate commerce, *i.e.*, those activities that substantially affect
> interstate commerce.

Id. at 558-59 (citations omitted).

In *Lopez*, the Court found that the Gun-Free School Zones Act, 18 U.S.C. § 922(q),

exceeded Congress's authority under the third category, because the Act criminalized

non-economic activity that did not "substantially affect" interstate commerce. Id. at 560-

65. Similarly, in *United States v. Morrison*, 529 U.S. 598 (2000), the Court struck down

a provision of the Violence Against Women Act, 42 U.S.C. § 13981, that provided civil

remedies for certain gender-motivated crimes. In it's holding, the Court explained:

> The Constitution requires a distinction between what is truly national and
> what is truly local. In recognizing this fact we preserve one of the few
> principles that has been consistent since the [Commerce] Clause was
> adopted. The regulation and punishment of intrastate violence that is not
> *directed at* the instrumentalities, channels, or goods involved in interstate
> commerce has always been the province of the States. Indeed, we can
> think of no better example of the police power, which the Founders denied
> the National Government and reposed in the States, than the suppression
> of violent crime and vindication of its victims.

*Id.* at 599 (emphasis added).

Finally, in *Jones v. United States*, 529 U.S. 884 (2000), the Court held that the phrase

"property used in . . . any activity affecting interstate or foreign commerce" could not

reach private dwellings within the Federal Arson statute, 18 U.S.C. 844(i). Id. The

Government argued that the residential home at issue was "used" in interstate commerce

because it was (1) used as collateral for an out-of-state mortgage; (2) used to obtain an

out-of-state insurance policy; and (3) received natural gas from an out-of-state utility. Id.

at 848. The Court rejected the Government's "expansive interpretation" of what

constitutes commerce, holding that "[i]f such connections sufficed to trigger § 844(i), the statute's limiting language, 'used in' any commerce-affecting activity, would have no office."  Id. at 857.

Taken together, these cases remind us of the limited influence the Founders envisioned Congress exercising within traditionally state-regulated spheres of non-commercial activity.  Indeed, as Judge Posner has noted, "we are in a new era and must be wary" of government attempts to "allow the concept of 'commerce' (interstate or foreign) to expand to the point at which every transaction in the American economy would be within Congress's reach."  *United States v. Marrero*, 299 F.3d 653, 656 (7th Cir. 2002) (Hobbs Act).

Here, it is evident that Congress has overstepped its constitutional bounds. Section 1201(a) broadly sweeps all kidnappings where "the offender . . . uses . . . any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense" into the federal government's arena.  This provision renders the statute unconstitutional, insofar as that alone is the basis for federal jurisdiction (as in this case).   The "usage" provision contains no meaningful limiting language.  See *Jones*, 529 U.S. at 858 ("[i]f such connections sufficed to trigger § 844(i), the statute's limiting language, 'used in' any commerce-affecting activity, would have no office."); see also *Patton*, 451 F.3d at 632 ("where a jurisdictional element is required, a meaningful one, rather than a pretextual incantation evoking the phantasm of commerce, must be offered.") (quoting *United States v. Maxwell*, 446 F.3d 1210, 1217 [11th Cir.

2006]).  Under the broad terms of this provision, it is virtually impossible to imagine a kidnapping scenario, however localized, that would *not* trigger federal jurisdiction.[3]

The Supreme Court has held that "Congress can certainly regulate interstate commerce to the extent of forbidding and punishing the use of such commerce as an agency to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin."  *United States v. Lawrance*, 548 F.3d 1229, 1337 (quoting *Brooks v. United States*, 267 U.S. 432, 436 (1925)).  In furtherance of these goals, however, Congress does not have unbridled power to regulate.  Instead, "Congress may regulate not 'conduct *related* to interstate commerce but rather interstate commerce itself – barring from the channels of interstate commerce a class of goods or people.' " Id. (quoting *Patton*, 451 F.3d at 620-21) (emphasis in original); see also *Shreveport Rate Cases*, 234 U.S. 342, 353 (1914) (Congress has authority to "prevent the common instrumentalities of interstate and intrastate commercial intercourse from being used in their intrastate operations *to the injury of interstate commerce*.") (emphasis added); *Morrison*, 529 U.S. at 599 ("The regulation and punishment of intrastate violence that is not *directed at* the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States.") (emphasis added).

The Tenth Circuit has followed the Supreme Court's lead and reiterated that "the first prong, and even the second prong, of *Lopez* focuses on statutes that prevent the use of interstate commerce that results in harm to the populations of states other than those where such harm originates."  *Lawrance*, 548 F.3d at 1337 (citing *Brooks*, 267 U.S. at

---

[3] Prior to the 2006 amendments, § 1201(a) properly vested federal jurisdiction at the moment the offender physically transported the kidnapped person in interstate commerce, i.e., across state lines, and availed himself of an "artificial geographic refuge" only federal law enforcement could ignore.  *Moore*, 571 F.2d at 83.

436-37); but see *United States v. Kammersell*, 196 F.3d 1197 10th Cir. 1999) (upholding a conviction under 18 U.S.C § 875(c) [transmitting threats] after finding that the threatening 'instant message' traveled out of state before it was received by the intrastate target) ("because § 875(c) requires the use of a channel of commerce, it is not subject to the same limiting interpretation as *Lopez*.").[4]

### IV.   The Type of Intrastate Kidnapping Alleged Here Does Not Substantially Affect Interstate Commerce

In the case at bar, the Indictment alleges Ms. Ochoa kidnapped Marilyn Foss "and did use a means, facility, and instrumentality of interstate and foreign commerce, those being electronic mail and cellular telephone(s) in committing and in furtherance of the commission of the offense in violation of § 1201(a)."  See Doc. 48, at 2.  Congress, however, cannot regulate this alleged offense because (i) the alleged offense did not injure "people of other states from the state of origin" and (ii) the alleged offense did not include the use of any means, facility, or instrumentality of commerce "in their interstate operations to the injury of interstate commerce." *Shreveport Rate Cases*, 234 U.S. at 353. At best, the alleged kidnapping was "conduct *related to* interstate commerce," which Congress may regulate only when such conduct "substantially affects" interstate commerce (*i.e.*, the third category of *Lopez* regulation).

---

[4] *Kammersell* is not a case helpful to Defendant's argument.  However, it is distinguishable.  First, it upholds a conviction under § 875(c), which prohibits transmitting in interstate commerce a communication to injure another by means of a bomb threat.  The transmission is much more integral to the crime than is the cursory "use" of a telephone to "further" a kidnapping.  Second, the case was decided prior to *Morrison*.  The Tenth Circuit's view of commerce clause power is better reflected in *Patton*, which was decided in 2006, and places decidedly greater limits on Congress's authority than previous cases.

Congress may "regulate those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affected interstate commerce." *United States v. Jeronimo-Bautista*, 425 F.3d 1266, 1269 (10th Cir. 2005) (as-applied challenge); *United States v. Grimmett*, 439 F.3d 1263, 1272 (10th Cir. 2006) (facial challenge).  In addressing the constitutionality of a statute based upon Commerce Clause authority within the third category, courts consider the four factors delineated by the Supreme Court in *Morrison*.  These are:

> (1) whether the prohibited activity is commercial or economic in nature; (2) whether the statute's reach was limited by an express jurisdictional element; (3) whether Congress made findings about the effects of the prohibited conduct on interstate commerce; and (4) whether there exists a link between the prohibited conduct and the effect on interstate commerce.

*Jeronimo-Bautista*, 425 F.3d at 1269.

This motion will analyze the constitutionality of the amended Federal Kidnapping Act, on its face and as applied to Defendant Ochoa, under each of these four factors.

### A.   Mere Use of Mail (or an Instrumentality of Commerce) Does not Render the Activity in Question, Kidnapping, Commercial in Nature

The activity encompassed by the broad reach of the amended kidnapping statute is not commercial or economic in any way that truly impacts commerce.  In analyzing the first prong, whether the prohibited activity is commercial in nature, courts should not "allow the concept of 'commerce' (interstate or foreign) to expand to the point at which every transaction in the American economy would be within Congress's reach." *Marrero*, 299 F.3d at 656 (Posner, J.).  Indeed, as the Tenth Circuit has noted: "The Supreme Court has warned against a definition under which 'any activity can be looked upon as commercial,' since this would obliterate the intended limits on federal power." *Patton*, 451 F.3d at 624 (quoting *Lopez*, 514 U.S. at 565).  In *Lopez*, the Court held that

possession of firearms, by itself, is not considered commercial or economic.  514 U.S. at 560 (finding that firearm possession near a school "by its terms has nothing to do with 'commerce' or any sort of economic enterprise").  Similarly here, the mere act of using a channel or instrumentality of commerce, even in furtherance of intrastate crime, is not a commercial or economic activity.  *See Schaefer*, 501 F.3d at 1197 (mere use of the Internet is not sufficient to vest federal jurisdiction under 18 U.S.C. § 2252(a)(2)).

**B.      The Statute's Reach Has Not Been Limited by an Express Jurisdictional Element**

Under the second prong, the "jurisdictional hook" must be substantive rather than an empty phrase used as a means to an end.  Section 1201(a)'s express jurisdictional element "fails to place any meaningful restriction on federal jurisdiction and fail[s] to establish the link between the violation and interstate commerce."  See *Jeronimo-Bautista*, 425 F.3d at 1269.  Section 1201(a) transforms the quintessential state crime of intrastate kidnapping into a federal offense as soon as the offender "uses . . . any means, facility, or instrumentality of interstate or foreign commerce in committing . . . the offense."  So although § 1201(a) "has a jurisdictional hook, . . . it does not seriously limit the reach of the statute."  *Patton*, 451 F.3d at 633.  Indeed, it is difficult to imagine any kidnapping whereby the offender does not "use" "any means, facility, or instrumentality on interstate or foreign commerce" which could include driving in cars, walking on roads, talking on telephones, or accessing the Internet.  See *Jones* 529 U.S. at 857 (rejecting an "expansive interpretation" of the term "commerce" because "[p]ractically every building in our cities, towns, and rural areas . . . bears some other trace of interstate commerce.").  In *Jones*, the federal arson statute was upheld only after the jurisdictional hook was interpreted to limit federal jurisdiction "to arson cases where there really was a

substantial and non-attenuated effect on interstate commerce."  *Patton*, 451 F.3d at 633. Here, even if the Court takes every word in the Government's Indictment as true, there is no basis to find that kidnapping involving use of electronic mail or cellular telephones had any substantial and non-attenuated effect on interstate commerce.

> **C.    Congress Made No Findings About the Effects on Interstate Commerce of Kidnapping While Using a Means of Commerce**

The third consideration in addressing the constitutionality of a statute based upon Commerce Clause authority is "whether Congress made findings about the effects of the prohibited conduct on interstate commerce." *Jeronimo-Bautista*, 425 F.3d at 1269.  Here, while there is ample history to support federal jurisdiction vesting as soon as a kidnapping victim has been transported across state lines, see *Chatwin*, 326 U.S. 455, the Congressional Record is devoid concerning any aspect of the 2006 amendments to § 1201(a).  There is nothing to suggest that purely intrastate kidnappings have any effect whatsoever on trade among the several states.  In addition, there is no reason to think that intrastate kidnappings that involve tangential use of any instrumentality of interstate commerce have any greater effect on interstate commerce than intrastate kidnappings that do not involve such a use.  *See Patton*, 451 F.3d at 633.

In the absence of *any* legislative history concerning the 2006 amendments to § 1201(a), this Court should not presume Congress intended to entirely take away from the States what has traditionally been well within the States' purview.  See *Jones*, 529 U.S. at 859 (Stevens, J., concurring) (noting that the severe penalties of the federal criminal arson statute could "effectively displace a policy choice made by the State."); *Lopez*, 514 U.S. at 561 n.3 ("When Congress criminalizes conduct already denounced as criminal by the States, it effects a change in the sensitive relation between federal and state criminal

jurisdiction.").   Until the 2006 amendments, the congressional intent of the Federal Kidnapping Act was clear: "to assist the states in stamping out" "every possible variety of kidnapping *followed by interstate transportation* [of the victim]."   *Chatwin*, 326 U.S. at 4XX (emphasis added).   Indeed every jurisdiction, in reviewing convictions under § 1201(a), required a showing that the victim traveled across state lines.   *See e.g., United States v. Walker*, 137 F.3d 1217, 1220 (10th Cir. 1998).   Additionally, the AUSA Criminal Resource Manual has yet to reflect this change in law and still "requires proof of transportation in interstate commerce, of an unconsenting person . . . ."   See Defendant's Exhibit A, copy of § 1033 of AUSA Criminal Resources Manual, attached hereto.

> **D.     There is No Link Between Kidnapping Using an Instrumentality of Interstate Commerce and An Effect on Interstate Commerce**

Finally, the link between using an instrumentality of interstate commerce in the commission of a kidnapping and deleterious effects on interstate commerce is too tenuous to pass constitutional muster under the "substantial effects" test of *Lopez* and *Morrison*. Under this test "[t]he ultimate inquiry is whether the prohibited activity has a substantial effect on interstate commerce."   *Patton*, 451 F.3d at 632.   As noted above, there is nothing in the Congressional Record, nor in the government's Indictment, to suggest that mere use of an instrumentality of interstate commerce in the furtherance of an intrastate kidnapping has any effect whatsoever on interstate or foreign commerce.

**CONCLUSION**

The Federal Kidnapping Act, on its face and as applied using the "jurisdictional hook" in this case, is unconstitutional.  Therefore Count 2 of the Indictment should be dismissed.

Respectfully submitted,

ROTHSTEIN, DONATELLI, HUGHES,
DAHLSTROM, SCHOENBURG & BIENVENU, LLP

By: _____/s/_____
        Carolyn M. "Cammie" Nichols
        500 4th St. NW, Suite 400
        Albuquerque, New Mexico 87102
        (505) 243-1443

        *Attorney for Defendant Sarah Ochoa*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on the 4th day of September, 2009, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Lynn Wei-Yu Wang
*lynn.wang@usdoj.gov*

_____/s/_____
ROTHSTEIN, DONATELLI, HUGHES, DAHLSTROM
SCHOENBURG & BIENVENU, LLP

13