**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

   Plaintiff,

v.                                                                No. 8-CR-1980 WJ

SARAH S. OCHOA,

   Defendant.

**MEMORANDUM ORDER AND OPINION DENYING DEFENDANT'S MOTION TO
DISMISS THE FEDERAL KIDNAPPING ACT CHARGE AS UNCONSTITUTIONAL**

THIS MATTER comes before the Court on Defendant Sarah Ochoa's Motion to Dismiss

the Federal Kidnapping Act Charge as Unconstitutional (Doc. 90).  A grand jury charged Ochoa

with violating the Hobbs Act, 18 U.S.C. § 1951, and the Federal Kidnapping Act, 18 U.S.C. §

1201(a)(1), after she allegedly kidnapped a Santa Fe, New Mexico realtor and forced the realtor

to withdraw and hand over the entire balance of her account at the Los Alamos National Bank.

In this Motion, Defendant argues that the Federal Kidnapping Act is facially unconstitutional

because it exceeds Congress' power under the Commerce Clause.  Defendant also argues that the

Act is unconstitutional as applied to her because all the relevant activity occurred within the

State of New Mexico and because the mere act of using a telephone or sending an e-mail is not a

sufficient nexus with interstate commerce to justify the exercise of federal jurisdiction.  Because

the Federal Kidnapping Act is a constitutional exercise of Congress's power under the

Commerce Clause, both on its face and as applied here, the Court DENIES Defendant's Motion.[1]

_____

[1] The Court denies this Motion without need for a hearing because the issue raised by the
Defendant is a purely legal one.  Furthermore, because the issue is well-settled by case law in the
Tenth Circuit and elsewhere, the Court is issuing this order ahead of receiving Defendant's

## BACKGROUND[2]

On November 29, 2007, Defendant Ochoa sent two e-mails to Marilyn Foss, a realtor in Santa Fe, requesting to view several properties in Santa Fe on December 3rd.  Ochoa identified herself as "Nata Ramien" and claimed she was a wealthy Lebanese woman looking for a house for her daughter who had just graduated from Yale Medical School and was moving to Santa Fe for her residency.  On December 2nd, Ochoa called Foss from a pay phone and left a voicemail explaining that she would meet Foss the following day at 11:00 a.m. in front of the local library.  On the morning of December 3rd, Ochoa called Foss again and confirmed the meeting time.

At 11:00 a.m. on December 3rd, Ochoa met Foss in front of the library as planned.  After visiting a property in Tesuque, the two traveled to a property at 38 Calle San Martin in Santa Fe.  While Foss was showing Ochoa around the basement of the property, she saw Ochoa pull what looked like a black semi-automatic handgun out of her purse.  Foss attacked Ochoa, but Ochoa prevailed after a brief struggle.  Ochoa allegedly sat on Foss's chest, put the gun to Foss's head and in her mouth, threatened to kill her, and demanded $500,000 from Foss.  When Foss protested that she did not have that much money, Ochoa demanded that Foss drive her to the Los Alamos National Bank in Santa Fe where Foss maintained accounts and ordered Foss to withdraw the entire balance of her account.  The two entered the bank together and Foss withdrew the money from her account, as instructed, and handed the cash to Ochoa.  After Ochoa fled from the bank, Foss reported the incident to bank officials.

## DISCUSSION

A grand jury charged Ochoa with violating the Federal Kidnapping Act, 18 U.S.C. § 1201(a)(1), which states:

---

Reply Brief.

[2] The Court lays out the facts as alleged by the Government.

> Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person . . . when . . . the offender . . . uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense . . . shall be punished by imprisonment for any term of years or for life . . . .

The Government claims that Ochoa's use of pay phones, a cell phone and the internet to facilitate the kidnapping constitutes the use of "any means, facility, or instrumentality of interstate . . . commerce" under the statute.  In this Motion, Ochoa argues that the Act surpasses Congress' authority to regulate under the Commerce Clause when the only interstate activity is the use of a telephone and the internet where the signal travels out-of-state before reaching the intended in-state recipient.  Relatedly, Ochoa argues that the Act is overly vague and contains no language which meaningfully limits the exercise of federal jurisdiction.

## I.  Commerce Clause Challenge

Under the Commerce Clause of the U.S. Constitution, Congress may regulate three broad categories of activity: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and (3) those activities which substantially affect interstate commerce.  *United States v. Lopez*, 514 U.S. 549, 558-59 (1995).  When Congress regulates the channels or instrumentalities of interstate commerce under *Lopez*'s first and second categories, its authority to regulate is plenary.  *See United States v. Al-Zubaidy*, 283 F.3d 804, 811 (6th Cir. 2002).  Congress may choose to regulate the channels or instrumentalities of interstate commerce even where the harmful targeted activity is purely local with no interstate effects.  *See United States v. Ballinger*, 395 F.3d 1218, 1226 (11th Cir. 2005) ("Plainly, congressional power to regulate the channels and instrumentalities of interstate commerce includes the power to prohibit their use for harmful purposes, even if the targeted

harm itself occurs outside the flow of commerce and is purely local in nature.").

The Court holds that, as applied to the facts here, the Federal Kidnapping Act is a constitutional exercise of Congress' power to regulate the instrumentalities of interstate commerce.[3]  The instrumentalities of interstate commerce are the means of interstate commerce, such as ships, railroads and telegraphs, as well as the persons or things transported by those instrumentalities.  *United States v. Patton*, 451 F.3d 615, 621-22 (10th Cir. 2006).  The Supreme Court has noted that the instrumentalities of interstate commerce are "not confined to the instrumentalities . . . known or in use when the Constitution was adopted, but they keep pace with the progress of the country."  *Id.* at 622 (citing *Pensacola Tel. Co. v. W. Union Tel. Co.*, 96 U.S. (6 Otto) 1, 9 (1877)).  In this vein, the Tenth Circuit, along with every other court to consider the question, has held that both telephones and the internet are instrumentalities of interstate commerce.

First, the Tenth Circuit has held that telephones—even when used only intrastate—constitute an instrumentality of interstate commerce.[4]  As the Court aptly explained more than three decades ago, "Both intrastate and interstate telephone communications are part of an aggregate telephonic system as a whole.  And as long as the instrumentality itself is an integral part of an interstate system, Congress has power, when necessary for the protection of interstate commerce, to include intrastate activities within its regulatory control."  *Kerbs v. Fall River Industries, Inc.*, 502 F.2d 731, 738 (10th Cir. 1974).  Cellular telephones, like land lines,

---

[3] The Defendant also brings a facial challenge to the Federal Kidnapping Act.  Because I find that the Act is constitutional as applied to the facts of this case, I need not address the Defendant's facial challenge to the Act.

[4] Telecommunications networks–which include both telephones and the internet—also qualify as channels of interstate commerce under *Lopez*'s first category.  *See, e.g.*, *United States v. Ho*, 311 F.3d 589, 597 (5th Cir. 2002) (noting that telecommunications networks are channels of interstate commerce).

are also instrumentalities of interstate commerce.  *United States v. Means*, 297 Fed. Appx. 755,

759 n.5 (10th Cir. 2008).  Every other circuit to consider the issue has agreed that telephones are

instrumentalities of interstate commerce.  *See, e.g.*, *United States v. Nader*, 542 F.3d 713, 717

(9th Cir. 2008) ("Telephones are instrumentalities of interstate commerce that fall within the

second *Lopez* category."); *United States v. Evans*, 476 F.3d 1176, 1180-81 (11th Cir. 2007);

*United States v. Giordano*, 442 F.3d 30, 39-41 (2d Cir. 2006); *United States v. Corum*, 362 F.3d

489, 493 (8th Cir. 2004) ("It is well established that telephones, even when used intrastate,

constitute instrumentalities of interstate commerce."); *United States v. Weathers*, 169 F.3d 336,

341 (6th Cir. 1999) (same); *United States v. Gilbert*, 181 F.3d 152, 159 (1st Cir. 1999) ("The use

of the telephone in this case to make a bomb threat [to an in-state recipient] was, without more,

sufficient to sustain jurisdiction under the interstate commerce clause."); .

Second, the Tenth Circuit has held that the internet is also an instrumentality of interstate

commerce.  *Utah Lighthouse Ministry v. Foundation for Apologetic Information & Research*,

527 F.3d 1045, 1054 (10th Cir. 2008) ("We agree that the Internet is generally an instrumentality

of interstate commerce."); *United States v. Schaefer*, 501 F.3d 1197, 1201 n.8 (10th Cir. 2007)

(recognizing the interstate and international architecture and operation of the world wide web).

In so holding, the Tenth Circuit joined a growing cadre of other Courts of Appeals to reach the

same conclusion.  *See, e.g.*, *United States v. Faris*, 583 F.3d 756, 759 (11th Cir. 2009) ("The

internet is an instrumentality of interstate commerce.") (quotation omitted); *United States v.*

*Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) (holding that the internet is both a channel and an

instrumentality of interstate commerce); *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir.

2007) (same); *United States v. MacEwan*, 445 F.3d 237, 245 (3d Cir. 2006) (same).

Congress may regulate the instrumentalities of interstate commerce—such as telephones

and the internet—regardless of whether the signals from such instrumentalities actually crossed

state lines.[5]  *See, e.g.*, *United States v. Marek*, 238 F.3d 310, 317 (5th Cir. 2001) ("When

Congress regulates and protects under the second *Lopez* category, therefore, federal jurisdiction

is supplied by the nature of the instrumentality or facility used, not by separate proof of interstate

movement."); *Faris*, 583 F.3d at 759 ("Even if none of [the defendant's] communications were

routed over state lines, the internet and telephone he used to contact the undercover officer were

still 'instrumentalities of interstate commerce.'").  In any case, the Government has put forth

evidence showing that the e-mail messages at issue in this case actually crossed state lines.  The

first e-mail that Defendant sent to Foss traveled through servers in California and Colorado

before Foss received it in New Mexico.  The second e-mail traveled through servers in

California and Illinois.  Furthermore, Foss' employer stated that all e-mail traffic for Sotheby's

employees was routed through a server in New York.  Therefore, the e-mails that Defendant

used to lure Foss into a face-to-face meeting actually traveled across state lines multiple times

before reaching Foss.

As applied to these facts, the Federal Kidnapping Act falls squarely within Congress's

power to regulate under the Commerce Clause.  While the Defendant is correct that the Tenth

---

[5] The Defendant points to *United States v. Schaefer*, 501 F.3d 1197 (10th Cir. 2007), in
which the Tenth Circuit held that to convict a person of receiving and possessing child
pornography images under 18 U.S.C. §§ 2252(a)(2) and (a)(4)(B), the government must prove
that the image *actually* crossed state lines.  *Id.* at 1201.  That decision, however, was based on
statutory language which required that the image have "been mailed, . . . shipped or transported
in interstate or foreign commerce."  The Court held that "Congress's use of the 'in commerce'
language, as opposed to phrasing such as 'affecting commerce' or a 'facility of interstate
commerce,' signals its decision to limit federal jurisdiction and require actual movement
between states to satisfy the interstate nexus." *Id.*  In other words, Congress elected to require
proof of interstate movement for a conviction under that particular statute.  Congress specifically
chose not to exercise the full extent of its Commerce Clause power.  *Id.* at 1202.  The Federal
Kidnapping Act, on the other hand, uses broad language demonstrating Congress' intent to
exercise its full Commerce Clause powers.

Circuit has not yet had occasion to rule on the constitutionality of this Act as amended,[6] the

underlying principles of law are well settled.  Congress has plenary authority to regulate the

instrumentalities of interstate commerce.  *Lopez*, 514 U.S. at 558.  Both telephones and the

internet are instrumentalities of interstate commerce.  *See supra.*  Therefore, Congress has

plenary authority to regulate these devices and can forbid their use to facilitate

kidnapping—even when the kidnapping itself takes place entirely within the borders of one state.

*See Lopez*, 514 U.S. at 558 ("[Congress may regulate] the instrumentalities of interstate

commerce . . . *even though the threat may come only from intrastate activities.*") (emphasis

added).

## II. Vagueness & Lack of Limiting Language

Briefly, I address the Defendant's argument that the Federal Kidnapping Act is overly

vague and contains no "meaningful limiting language".  Beyond these cursory allegations,

Defendant does not provide any support for these arguments.  A penal statute is

unconstitutionally vague if it fails to "define the criminal offense with sufficient definiteness that

ordinary people can understand what conduct is prohibited and in a manner that does not

encourage arbitrary and discriminatory enforcement."  *Kolender v. Lawson*, 461 U.S. 352, 357

(1983).  The Federal Kidnapping Act is far from vague under this definition.  The Act prohibits

the use of "the mail or any means, facility or instrumentality of interstate or foreign commerce"

to facilitate a kidnapping.  Courts have long recognized both telephones and the internet as

instrumentalities of interstate commerce.  Therefore, the Act clearly prohibits the use of either to

facilitate kidnappings.  Furthermore, the Act contains sufficient limiting language.  It only

---

[6] Congress amended the Federal Kidnapping Act in 2006 to expand its scope and prohibit the use of "the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense."  Before 2006, the Act only prohibited kidnappings during which the victim was physically transported across state lines.

criminalizes kidnappings when the offender uses an instrumentality of interstate commerce "in committing or in furtherance of the commission of the offense."  Mere use of a cell phone, for example, is not sufficient; the offender must uses the cell phone to further the kidnapping.  The Defendant complains that, under the Act, "it is virtually impossible to imagine a kidnapping scenario, however localized, that would *not* trigger federal jurisdiction."  Clearly, however, kidnappers who choose not to use an instrumentality of interstate commerce to facilitate the crime cannot be prosecuted under the federal statute.  It is true that, as modern technology advances, society has become more interconnected and more dependant on telecommunications networks that cross state lines.  This fact, however, does not alter Congress' express authority under the Commerce Clause to regulate the instrumentalities of interstate commerce.

## CONCLUSION

As applied to the facts here, the Federal Kidnapping Act is a constitutional exercise of Congress' power to regulate the instrumentalities of interstate commerce under the Commerce Clause.  Therefore, Defendant's Motion to Dismiss the Federal Kidnapping Act Charge as Unconstitutional is **DENIED**.

**SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE